STATE OF NORTH CAROLINA v. MARK STEPHEN THOMAS

No. COA08-599

(Filed 3 March 2009)

**Jury— voir dire reopened—use of remaining peremptory challenge**

The trial court erred by not permitting defendant to use his remaining peremptory challenge after voir dire was reopened. After the jury is empaneled, further challenge is within the judge's discretion, but once voir dire is reopened, each party has the absolute right to exercise remaining peremptory challenges.

Appeal by Defendant from judgment entered 2 October 2007 by Judge Ronald E. Spivey in Union County Superior Court. Heard in the Court of Appeals 12 January 2009.

*Attorney General Roy A. Cooper, by Special Deputy Attorney General Ronald M. Marquette, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Anne M. Gomez, for Defendant.*

BEASLEY, Judge.

Mark Stephen Thomas (Defendant) appeals from judgment entered on his conviction of second-degree murder. Because the trial court erroneously deprived Defendant of his right to use his remaining peremptory challenge, we hold Defendant is entitled to a new trial.

The evidence tended to show the following: on 11 October 2006, Defendant shot and killed Christopher Brynarsky (Brynarsky) at Brynarsky's car repair shop. Brynarsky was the owner of Union County Customs (UCC), a car bodywork and paint business. Thirteen months prior to 11 October 2006, Defendant brought his Toyota MR2 to Brynarsky's shop to have work done. Defendant testified that he had paid Brynarsky approximately $6,500.00 in advance to complete the work and provided all the necessary car parts. He was told that it would take about three to four weeks to complete. After approximately one month, Defendant frequently visited the car shop to check on the status of his car repairs. Brynarsky and Defendant's relationship became strained five months prior to the shooting. After numer-

ous heated conversations, Brynarsky refused to work on the car any longer and communicated that to Defendant on the morning of 11 October 2008.

Defendant received a call from Brynasky to pick up his car. Adam Frye, an employee at UCC, aware of the escalating conflict between Defendant and Brynasky, advised Defendant to retrieve his vehicle and parts at lunchtime, a time when Frye presumed that Brynasky would be away from the repair shop. Defendant went to Derek Parker's (Parker) house to pick him up to accompany him to the repair shop. Along the route to UCC, Defendant saw two sheriff deputies in separate locations and requested assistance from each in retrieving his car and parts. Each deputy refused to escort him to UCC.

Upon entering UCC, Defendant started collecting his car parts and dragging them to the door. Brynarsky approached Defendant and asked whether or not he had been "talking sh—" about him. Defendant admitted that he had been and Brynasky then stated, "f— you and f— your little faggott buddy. I'll kill both of you." Brynarsky then walked toward his tool box and brandished a shotgun. Defendant retrieved his gun from his person and fired two shots into the roof and Brynarsky aimed his shotgun at Defendant. Defendant fired a single shot at Brynarsky. Defendant called the police, notified them of the shooting, and asked them to meet him at a nearby restaurant parking lot.

## Right to Peremptory Challenge

Defendant argues that the trial court committed reversible error by failing to grant Defendant's request to remove a juror with his remaining peremptory challenge after the trial court reopened jury voir dire. Defendant contends that parties have an absolute right to exercise any remaining peremptory challenges to excuse a juror once the trial court reopens the examination of a juror and requests a new trial. We agree.

After the jury was impaneled and the trial was underway, the trial court learned that one of the seated jurors attempted to contact an employee in the District Attorney's Office prior to impanelment. The juror visited the District Attorney's Office with the intention of greeting a friend, but was unsuccessful in his attempts to speak with her. Voir dire was reopened, the trial court questioned the juror, and allowed the parties to do so as well. After questioning, defense coun-

sel requested that the juror be removed. The trial court denied this request and found that there would be no prejudice to either party to keep the juror seated. Defendant argues that his counsel informed the trial court that he had a peremptory challenge left and wished to use it to remove the juror.

The following was the exchange between the trial court and defense counsel:

The Court: [Defense Counsel], do you wish to be heard at all?

[Defense Counsel]: Well, obviously a relationship with someone in the D.A.'s office and actually going up there while we're selecting the jury, and I think that I know Your Honor, having been in front of you just a short period of time, know that you had admonished them and told them, and I think even had talked to them even at that point about the problem you had with a juror. Or maybe you told us about somebody talking to somebody. But, you know, he had those admonitions I think when—even though he hadn't been in the box, he was sitting out here with other jurors and expected to listen and follow the Court's orders. You know, obviously if he'd come back and said I did this, then I could have questioned him about it and maybe removed him from the jury. I think I still had one challenge left or could have even challenged him for cause. And now here we sit. So I'm asking that you remove him.

The Court: Well, the Court will find that the admonitions were not to have any contact with any of the attorneys or participants in the case. The Court will find that prior to being called up to the jury box that juror number eight, . . . , while in the jury pool of prospective jurors apparently went by the District Attorney's Office to say hello to a friend of his, did not speak with that person, did not talk about the case, and nothing else took place. The Court will find that even though it makes common sense that you not go visit the District Attorney's Office, the Court would find after a voir dire of the witness that there was nothing spoken of about this case, that he apparently did not realize until later that this was an error, which he does realize now. The Court will find there would be no prejudice to either party and the Court will deny the motion to strike at this point. . . .

"The right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to

the accused. . . ." *State v. Freeman*, 314 N.C. 432, 438, 333 S.E.2d 743, 747 (1985) (internal quotation marks omitted). N.C. Gen. Stat. § 15A-1217(b)(1) (2007) governs the number of peremptory challenges that a defendant in a non-capital case is allotted. Each defendant is allowed six challenges. The record indicates that Defendant only utilized five of the six peremptory challenges, making it clear that he had one remaining.

It is established that after a jury has been impaneled, further challenge of a juror is a matter within the trial court's discretion. *State v. McLamb*, 313 N.C. 572, 576, 330 S.E.2d 476, 479 (1985). However, " '[o]nce the trial court reopens the examination of a juror, each party has the *absolute* right to exercise any remaining peremptory challenges to excuse such a juror.' " *State v. Holden*, 346 N.C. 404, 429, 488 S.E.2d 514, 527 (1997) (quoting *State v. Womble*, 343 N.C. 667, 678, 473 S.E.2d 291, 297 (1996)) (emphasis added). It is undisputed in this case that the trial court, did in fact, reopen voir dire.

Stating Defendant's concerns about the juror's conduct, he sufficiently communicated the grounds upon which he was requesting to exercise his remaining peremptory challenge. Defense counsel stated, "I think I still had one challenge left or could have even challenged him for cause. And now here we sit. So I'm asking that you remove him." Subsequently, Defendant's motion was improperly denied. As a matter of law, Defendant was entitled to exercise his remaining peremptory challenge.

For the foregoing reasons, we conclude that the trial court committed reversible error by failing to permit Defendant to use his remaining peremptory challenge. Defendant is entitled to a new trial.

New Trial.

Chief Judge MARTIN and Judge BRYANT concur.