STATE OF NORTH CAROLINA
v.
DANNY LAMONT THOMAS

No. COA13-175

Filed 15 October 2013

**Jury—use of peremptory challenge after trial began—examination reopened—no questions by defense**

The trial court erred in a prosecution for first-degree murder and other charges by not allowing a juror to be removed with a peremptory challenge after the trial had begun. The trial reopened examination of the juror when it allowed defendant and the State to re-question the juror, and defendant was not required to ask any questions to preserve his right to use a remaining peremptory challenge.

Appeal by Defendant from judgments entered 18 May 2011 by Judge Thomas H. Lock in Superior Court, Columbus County. Heard in the Court of Appeals 10 September 2013.

*Attorney General Roy Cooper, by Special Deputy Attorney General Jonathan P. Babb, for the State.*

*Jarvis John Edgerton, IV for Defendant.*

McGEE, Judge.

Danny Lamont Thomas (Defendant) was convicted of multiple criminal charges, including four counts of first-degree murder, on 5 May

2011. The basic issue argued in Defendant's appeal involves a juror who sat on the panel that convicted Defendant.

Jury *voir dire* was conducted, and the jury was impaneled on 20 April 2011. Heather Hinson (Hinson) was juror number eight. On the third day of the evidentiary portion of the trial, during a break in the testimony of the State's ninth witness, Centia Wilson (Wilson), Hinson informed a court official that she knew Wilson from high school. Hinson had not recognized Wilson's name, partly because it had changed since high school. The trial court informed Defendant and the State, and Hinson was called for questioning outside the presence of the other jurors.

The trial court asked Hinson a number of questions concerning the nature of her relationship with Wilson. Hinson testified that Wilson was a high school acquaintance, but they were not true friends in high school, and had not kept in touch after graduation from high school in 1993. Hinson testified she could remain fair and impartial, and that her past acquaintance with Wilson would not affect her ability to serve as a juror. The trial court then asked both the Assistant District Attorney and Defendant's counsel if they had any questions for Hinson. Both the State and Defendant declined to question Hinson further, but Defendant moved to excuse Hinson for cause or, failing that, to be allowed to use a remaining peremptory challenge to remove Hinson from the jury. The trial court denied Defendant's motions and the trial continued with Hinson on the jury. Defendant was convicted on all charges. Defendant appeals.

I.

The relevant issue on appeal is whether the trial court erred in refusing to allow Defendant to use a remaining peremptory challenge to remove Hinson from the jury. We are compelled to hold that there was error.

II.

A.

The outcome of this appeal is controlled by *State v. Holden*, 346 N.C. 404, 488 S.E.2d 514 (1997). In *Holden*,

> [a]fter the close of all the evidence, the prosecutor informed the court that he had received information concerning [a juror]. The prosecutor advised the court that he had learned that [the juror] had in the last few years presented an argument against the death penalty in which she had asserted that no person had the right to take the life

of another person, that too many black defendants were receiving the death penalty, and that something should be done about this. The prosecutor told the court that his source was "an officer of the court."

*Holden*, 346 N.C. at 428, 488 S.E.2d at 527. The trial court reopened *voir dire*, and the juror was questioned by the trial court, the prosecutor, and defense counsel. *Id.* Following this *voir dire*, the prosecutor asked the trial court to remove the juror for cause. The trial court declined, so the prosecutor asked to use a remaining peremptory challenge to remove the juror, even though all evidence had already been presented. The trial court allowed the prosecutor to use a peremptory challenge to remove the juror. *Id.* The defendant argued on appeal that the trial court abused its discretion by reopening *voir dire* after the close of all the evidence based only on information obtained from an unnamed "officer of the court." *Id.* The defendant further argued the trial court erred "by permitting the State to exercise a peremptory challenge to excuse a juror after the jury was impaneled." *Id.* at 428, 488 S.E.2d at 526-27.

Our Supreme Court acknowledged that the relevant statute did not address reopening questioning of a juror *after* the jury had been impaneled, stating:

> While not addressed by [the relevant] statute, [N.C. Gen. Stat. § 15A-1214(g)], this Court has held that the trial court may reopen the examination of a juror after the jury is impaneled and that this decision is within the sound discretion of the trial court. *State v. McLamb*, 313 N.C. 572, 575–76, 330 S.E.2d 476, 479 (1985); *State v. Kirkman*, 293 N.C. 447, 452–54, 238 S.E.2d 456, 459–60 (1977).

*Holden*, 346 N.C. at 429, 488 S.E.2d at 527. N.C. Gen. Stat. § 15A-1214(g) states:

> If at any time after a juror has been accepted by a party, and before the jury is impaneled, it is discovered that the juror has made an incorrect statement during voir dire or that some other good reason exists:
>
> (1) The judge may examine, or permit counsel to examine, the juror to determine whether there is a basis for challenge for cause.
>
> (2) If the judge determines there is a basis for challenge for cause, he must excuse the juror or sustain any challenge for cause that has been made.

(3) If the judge determines there is no basis for challenge for cause, any party who has not exhausted his peremptory challenges may challenge the juror.

Any replacement juror called is subject to examination, challenge for cause, and peremptory challenge as any other unaccepted juror.

N.C. Gen. Stat. § 15A-1214(g) (2011). Having held that existing law allowed the trial court discretion to reopen *voir dire* for a juror after the jury was impaneled, our Supreme Court in *Holden* then simply adopted the statutory standard for challenging a juror after the juror had been accepted, but before the full jury had been impaneled, as codified in N.C.G.S. § 15A-1214(g). *See Holden*, 346 N.C. at 429, 488 S.E.2d at 527.

Our Supreme Court cited an earlier opinion which interpreted N.C.G.S. § 15A-1214(g), in the pre-impaneling context, for the proposition that " '[o]nce the trial court reopens the examination of a juror, each party has the absolute right to exercise any remaining peremptory challenges to excuse such a juror.' " *Holden*, 346 N.C. at 429, 488 S.E.2d at 527 (citing *State v. Womble*, 343 N.C. 667, 678, 473 S.E.2d 291, 297 (1996)). In *Holden*, our Supreme Court held that this absolute right to use a remaining peremptory challenge to remove a juror applied even after the jury had been impaneled (or, on the facts of *Holden*, even after the evidentiary portion of the trial had been concluded), so long as the trial court had not abused its discretion in reopening the examination of the juror. *Id.*

B.

Allowing, as an absolute right, the removal of a juror with a peremptory challenge before the jury has been impaneled serves legitimate goals and results in limited disruption in the trial process. However, serious questions arise when this "right" is removed from the context in which it was established in N.C.G.S. § 15A-1214(g), and applied after the jury has been impaneled.

Possible troubling scenarios include: (1) near the end of a trial the defense believes is going against the defendant, a concern is raised about the conduct of multiple jurors. The trial court allows *voir dire* of those jurors and determines no improprieties were involved. The trial court refuses to excuse those jurors for cause, but the defendant has three remaining peremptory challenges and uses them all. The trial must start anew; (2) or the State believes a juror has appeared sympathetic to the defendant during trial. An unnamed officer of the court tells

STATE v. THOMAS

[230 N.C. App. 127 (2013)]

the prosecutor that the juror may have violated an instruction from the judge. The trial court allows *voir dire* to investigate, but finds no cause to remove the juror. The State uses a peremptory challenge to remove the one juror who could have prevented a conviction.

Further, it seems likely that, after a trial has started, a trial court will be reluctant to allow questioning of jurors whose actions are in question in order to avoid the opportunity for the use of peremptory challenges. However, trial courts should be encouraged to allow thorough investigations of jurors, when needed, to determine if there is reason to excuse them for cause.

C.

In this case, after the jury had been impaneled and trial had started, Hinson informed the trial court that she had attended high school with the State's witness, Wilson, who was currently testifying. The trial court stated: "I need to – consistent with what I did with the last juror who knew a witness, we need to talk with her on the record outside the presence of the other jurors." The trial court further stated that "when we return from lunch, we'll send for Ms. Hinson first, and chat with her about the nature of her acquaintance with this witness, Ms. Wilson. After we've done that and heard you on that, we'll bring Ms. Wilson back to the stand and resume her testimony."

The trial court questioned Hinson outside the presence of the remainder of the jury concerning her relationship with the State's witness. Hinson testified that she was little more than a friendly acquaintance of Wilson in high school, that she had not really spoken to Wilson since graduating from high school in 1993, and that she felt her prior acquaintance with Wilson would not influence her ability to consider Defendant's case fairly at trial. The trial court then asked if there were any questions by the State or the defense "concerning this limited area of inquiry[.]" Both the State and Defendant indicated they did not need to question Hinson beyond the questioning already conducted by the trial court.

Hinson left the courtroom, and the trial court asked if the State or Defendant had anything to say outside Hinson's presence. The State answered "no," but Defendant challenged Hinson for cause, which was denied. Defendant then requested to use a peremptory challenge to exclude Hinson:

> MR. PAYNE: We move to reopen voir dire on [Hinson], and that we would have used a peremptory challenge had we known that [Hinson's relationship to Ms. Wilson].

THE COURT: Well, now, I gave you the opportunity to reopen voir dire. That's what I was doing.

. . . .

MR. PAYNE: Judge, we don't wish to ask any further questions. The request for the reopening of voir dire is to exercise a peremptory challenge –

THE COURT: I see. Procedural.

MR. PAYNE: -- that we would have used if we had known that.

The trial court denied Defendant's motion to "reopen voir dire" and use a remaining peremptory challenge to remove Hinson from the jury. However, as held in *Holden*:

> While not addressed by statute, this Court has held that the trial court may reopen the examination of a juror after the jury is impaneled and that this decision is within the sound discretion of the trial court. *State v. McLamb*, 313 N.C. 572, 575–76, 330 S.E.2d 476, 479 (1985); *State v. Kirkman*, 293 N.C. 447, 452–54, 238 S.E.2d 456, 459–60 (1977). "[O]nce the trial court reopens the examination of a juror, each party has the absolute right to exercise any remaining peremptory challenges to excuse such a juror." *Womble*, 343 N.C. at 678, 473 S.E.2d at 297.

*Holden*, 346 N.C. at 429, 488 S.E.2d at 527.

The State contends that, because Defendant did not ask any questions when given the opportunity to do so, the trial court did not reopen the examination of the juror. We must disagree. In *State v. Kirkman*, 293 N.C. 447, 238 S.E.2d 456 (1977), cited above in *Holden*, the State moved the trial court to reopen examination of a juror after the jury had been impaneled. "In its discretion, the court permitted this and called the juror back for further examination. *Without further questioning*, the District Attorney 'in the interest of time' exercised one of his remaining three peremptory challenges, and the court, in its discretion, allowed the challenge[.]" *Kirkman*, 447 N.C. at 453, 238 S.E.2d at 459 (emphasis added). Once the trial court has reopened examination of a juror, it is not necessary for a party to ask questions simply to activate the right to use a remaining peremptory challenge. *Id.* In *Kirkman*, we note that our Supreme Court stated that the trial court, in its discretion, granted the State's peremptory challenge. *Id.* To the extent that granting

**STATE v. THOMAS**

[230 N.C. App. 127 (2013)]

a peremptory challenge after the reopening of examination of a juror was discretionary in *Kirkman,* our Supreme Court in *Holden* appears to have overruled *Kirkman. Holden,* 346 N.C. at 429, 488 S.E.2d at 527 (" '[o]nce the trial court reopens the examination of a juror, each party has the absolute right to exercise any remaining peremptory challenges' ") (citation omitted).

In the present case, we hold that, once the trial court allowed Defendant and the State to re-question Hinson, it reopened examination of Hinson for the purpose of *Holden.* At that point, Defendant was not required to ask any questions in order to preserve his right to use a remaining peremptory challenge to remove Hinson. We are compelled by *Holden* and *Kirkman* to reverse and remand for a new trial. *See also State v. Hammonds,* __ N.C. App. __, __, 720 S.E.2d 820, 821 (2012) ("Under [*Holden* and *State v. Thomas,* 195 N.C. App. 593, 673 S.E.2d 372, *disc. review denied,* 363 N.C. 662, 685 S.E.2d 800 (2009)], because the trial court reopened voir dire [after the jury was impaneled] and because defendant had not exhausted all of his peremptory challenges, the trial court was required to allow defendant to exercise a peremptory challenge to excuse the juror. Defendant is, under *Holden* and *Thomas,* entitled to a new trial.").

In light of our holding above, we do not address Defendant's additional argument.

New trial.

Judges McCULLOUGH and DILLON concur.